THOMAS, Justice
(dissenting).
The circuit judge found that no genuine issue of fact was presented by the complaint, answer and depositions so he disposed of the litigation by entry of a summary judgment in favor of the defendants, who are now appellees. Inasmuch as the parties stipulated that the matter be determined by summary judgment, I go direct to the relevant facts to get a foundation for a decision.
The appellant, a real estate broker, ■claimed that he obtained from the appel-lees a ‘listing’ of certain property they owned and that he was to receive a commission for producing a purchaser ready, willing and able to buy the land on the terms prescribed. He alleged that he secured a purchaser who, after continuous negotiations, bought a part of the tract and that he was, therefore, entitled to a commission ■on the part sold. The appellees declined ■to pay and this suit followed.
The appellees admitted that they placed the property with the appellant for sale, but they denied that 'as a result of continuous negotiations, á sale of a portion of the land was made to the buyer produced by the appellant. According to the answer, the whole tract consisted of twenty-seven acres planted in citrus trees which the appellees were offering for $75,000. The appellant heard that the Board of Public Instruction needed land in the vicinity as a site for a school and he undertook to sell the land to the board representing that its area was thirty-seven acres. The board objected to the price and when the appellant reported the objection to appellees they agreed to sell for $71,500 net. The board expressed a willingness to purchase at the lower price but when the appellant and the board discovered the disparity in acreage, the board declined to buy. The appellant reported the situation to appellees and told them he thought he could sell fifteen acres to the board but the appellees refused to put a price on a portion of the property and advised appellant he would have to sell all the land or he could sell none. Since the appellant “said * * * he could not sell it all,” to quote the appellees’ answer, the appellant • was told he “should just forget the entire matter * * * and it was definitely understood * * * that the matter of the [appellant] selling a portion of said property was out of the question and would not be considered- by the [appellees] under any circumstances.”
To continue with an analysis of the answer, after “the matter of selling the property was entirely forgotten” by the appel-lees, the board sent an appraiser to value the property apparently as a preliminary to an action in eminent domain, and the board requested a conference during which- the appellees were- told that the board would condemn fifteen acres of the property unless the appellees agreed to sell that much at a price acceptable to the board. 1 The attorney for the board “threatened” such procedure unless the parties could reach a compromise and it was “under pressure of the threat of eminent domain proceedings, reluctantly, unwillingly and involuntarily” *723 that the appellees finally sold fifteen acres for $45,000.
The appellees concluded by repeating the statement that the sale did not result from' appellant’s efforts but was an “unwilling” act on their part due to the “pressure applied” by the school board and the board’s attorney through “threats of invoking its powers of eminent domain.”
I think this synopsis of the pleadings gives a fair picture of the transaction and I will not amplify it with a summarization of the contents of the depositions, but'will refer to certain parts of the deposition of one of appellees which I consider significant.
In answering the first question it is necessary to decide whether or not the appellant was entitled to a commission when he was engaged to secure a buyer for the whole tract and only part of it was sold. The appellees stand on the general rule that when a person is promised a commission for the sale of an entire tract of land and finds a purchaser for only part of it, he is not entitled to compensation on the part sold. But I do not feel that such is the law which governs this particular case. I think, rather, that the rule announced in Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, is appropriate. We said there that when a counteroffer is made by the prospective purchaser the owner' is privileged to reject it, but if he accepts he must pay the broker. We also declared that when the broker has brought the parties together and a sale eventuates as a result of continuous negotiations, the broker will not be denied recovery because of a variance between the original terms and those finally accepted by the owner. I can see no distinction between the variation there, of price, and the variation here, of acreage.
I have italicized the word “continuous” because of the appellees’ position that they would sell all the property or none and that they “entirely” forgot the whole matter, as they told appellant he should do, when it developed that the board would take only fifteen acres. I am not able to give this construction to the testimony of the appellee — J. M. Hemphill. He first testified that when the appellant asked him if he would consider selling ten or fifteen acres, he said he would not. But he later stated that appellant had told him he was trying to sell the board part of the land and in answer to the question: “And then you continued to — the listing on all of it and it was in effect when you sold part of it to the School Board.” he answered “Yes.”
It is not disputed that that is exactly what the appellees did and I have the definite view that the negotiations continued between the appellees and the very purchaser appellant produced.
I find the excuse of coercion by the board to be totally without merit. Long ago this court decided in Fuller v. Roberts, 35 Fla. 110, 17 So. 359, 362, that “there can be no duress of goods in law where the act done or threatened is nothing more than what the party had a legal right to do.” The so-called threat that the board would take appellees’ property if they would not agree upon a price was in truth no ‘threat’ at all. That word implies that something will be done to hurt, punish, menace or harm the one to whom it is addressed. The appel-lees could not be harmed or hurt or punished or menaced by the institution of the eminent domain proceedings, because their property could not be taken without “just compensation,” Section 12, Declaration of Rights, F.S.A. Constitution of Florida, and the Fifth Amendment of the Constitution of the United States. In my opinion these guarantees reduce to a nullity the argument that the final sale of part of the property was induced by a ‘threat’ which caused a renewal of negotiations after they had ceased, and the prospect of a sale had been relegated to limbo. The appellees were not forced to sell any part of the land to the board, and when they did sell to a buyer whom the appellant had interested, they became liable to the appellant for his commission.
I think the judgment should be reversed so I dissent.